OPINION OF THE COURT
Tom, J.P.
The issue raised on this appeal is whether petitioner owner’s proposed installation of an elevator shaft within a tenant’s apartment will change the shape and character of the dwelling space and materially affect the tenant’s use and enjoyment of that space in contravention of the rent laws.
Owner acquired the premises known as 218 East 84th Street in Manhattan by an indenture dated April 14, 2009. The building is described as a five-story walk-up containing 20 residential units, four on each floor. Two weeks later, owner filed an application with respondent Division of Housing and Community Renewal (DHCR) to install an elevator.
Owner’s application recites that five apartments in vertical line D of the building “will need to transfer space from their existing kitchens to the proposed [elevator] shaft.” The ground-floor unit, which is rent-stabilized, is occupied by tenant John Burke. The other four apartments in line D are currently vacant and deregulated. Tenant’s unit is a rectangular studio apartment with the bathroom and kitchen located in the front of the dwelling unit and the- rear of the unit facing the courtyard. In order to accommodate the elevator shaft to be installed at the front of the unit, the existing bathroom would be relocated rearward in the space now occupied by the kitchen, which would, in turn, be reconstructed in the living area. This being a *107 small studio apartment, the living room also functions as tenant’s bedroom.
In its application, owner proposed extending the rear of the building into the backyard to replace the floor space lost by the installation of the elevator shaft; renovating tenant’s apartment and relocating tenant to a comparable apartment at owner’s expense during the approximately two months required to complete the necessary alterations; and reducing tenant’s rent by 10% to compensate for his loss of the use of that portion of the backyard taken up by the proposed extension. The Rent Administrator issued an order granting owner “permission to change or decrease dwelling space, essential services, etc.” pursuant to Rent Stabilization Code (9 NYCRR) § 2522.4.
Tenant filed a petition for administrative review (PAR) supported by the affirmation of his attorney, asserting that tenant has resided in the apartment since 1978, that he is a “severely disabled senior citizen, who requires the assistance of a home attendant due to his poor health” and that requiring him to relocate, even temporarily, would be “extremely burdensome, due to his poor health and advanced age.” It asserts that owner’s attempt to compensate for the loss of the 66 square feet required for the elevator shaft by extending the rear of the apartment is inadequate and that the proposed alterations “would completely change the shape and character of the apartment.”
By order of the Deputy Commissioner, DHCR granted tenant’s PAR and revoked the Rent Administrator’s order. The Deputy Commissioner’s order summarizes owner’s proposal to take about 63 square feet, or 18% of the dwelling space, from the front of the apartment to accommodate the elevator shaft and to add some 66 square feet at the rear of the apartment. The order further notes that the proposed elevator installation is not a necessary improvement or required by law. It makes no finding on whether the backyard was under the exclusive control of tenant, nor does it address either the effect of a temporary relocation on his health or the benefit conferred by receiving a newly renovated apartment with a 10% reduction in rent. It concludes that the proposed alterations to the apartment “would result in a significant reconfiguration of the apartment and the impact of such a significant change would materially reduce the use and enjoyment of the apartment by the tenant in contravention of the Rent Laws.”
Owner brought this CPLR article 78 proceeding to annul DHCR’s determination, culminating in the judgment under review. *108 Supreme Court held that “DHCR’s determination is based on its evaluation of the specific facts of this situation and its expertise in evaluating such facts [ ] is supported by the record, and is therefore entitled to deference and shall not be disturbed” (30 Misc 3d 1224[A], 2011 NY Slip Op 50192[U], * 7 [2011]). Owner contends that the court committed error in deferring to the agency’s expertise because DHCR’s determination was issued “without regard to the facts” and was, thus, arbitrary and capricious.
Applications to reduce or alter dwelling space pursuant to section 2522.4 are fact-specific, warranting assessment on a case-by-case basis, and the courts appropriately defer to an administrative agency’s determination based on an “evaluation of factual data and inferences to be drawn therefrom” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]). Where an agency’s factual findings have a rational basis and are not unreasonable, its determination will not be disturbed (Matter of Salvati v Eimicke, 72 NY2d 784, 791 [1988]).
DHCR’s determination was not arbitrary and capricious within the meaning of Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County (34 NY2d 222, 231 [1974]). The finding that owner’s proposal would significantly reconfigure the apartment, thereby materially reducing tenant’s use and enjoyment, has a rational basis in the record and therefore, was not made “without regard to the facts” so as to be deemed arbitrary (Matter of West Vil. Assoc. v Division of Hous. & Community Renewal, 277 AD2d 111, 112 [2000]). While owner contends, inter alia, that the foyer area (separated from the proposed new kitchen by a “dropped arch”) should be included in the calculation of the new kitchen size, there is a rational basis for the Commissioner’s decision not to include this space. Notwithstanding that the exact dimensions and relative desirability of the existing and proposed kitchens are subject to debate, the existing kitchen certainly appears much more spacious, consisting of about 9V2 feet of counter space and appliances against one side wall with about 6V2 feet of open kitchen space in front. Owner’s diagram shows that the proposed kitchen would consist of 6V2 feet of counter space and appliances against the bathroom wall and, parallel to it, a row of counter tops extending 61/2 feet from the side wall, with a two-foot-five-inch-wide aisle separating the two counters. The effect of the alteration would reduce the actual physical space available for food preparation to a *109 significantly smaller area with only a two-foot-five-inch wide and six-foot-six-inch long, narrow aisle in which to move about to cook and wash. Further, a comparison of the respective floor plans shows that the existing kitchen includes a three-foot by five-foot closet or pantry, as well as a small clothes closet. In the proposed plan, the pantry and small closet are eliminated, in part to enlarge the bathroom from its original width of 51//2 feet to approximately eight feet seven inches. The proposed alteration would leave the new kitchen without a pantry or closet space. Owner’s proposed replacement closet, to be built in the living room/bedroom, would also diminish tenant’s living space in that part of the apartment. Whatever else may be said, the record supports the Deputy Commissioner’s finding that the proposed alterations to the kitchen represent “a significant reconfiguration of the apartment.” Owner’s proposal would change the “shape and character” of tenant’s existing apartment from the one he rented (see Matter of Greenberg v Higgins, 167 AD2d 216, 217 [1990]).
The dissent is incorrect that the majority misapprehends that “ ‘adequate substitution’ means replication.” Rather, our ruling is based on the record, which amply supports the Deputy Commissioner’s findings that owner’s proposed alteration would result in a “significant reconfiguration” of tenant’s dwelling space, specifically the kitchen and the substantial reduction of its size, and the adverse impact on tenant’s use and enjoyment of the apartment. Contrary to owner’s contention, the Deputy Commissioner clearly appreciated that the amount of living space to be removed from the kitchen area of the apartment was to be replaced with an equivalent amount of space added to the living-dining area by extending the apartment into the backyard. However, based on the foregoing findings, the Deputy Commissioner determined that owner’s proposal to enlarge the apartment by 66 square feet, extending it into the backyard, would not be an adequate substitute for the lost dwelling space.
Here, the issue is whether owner’s installation of an elevator shaft and necessary alterations to tenant’s apartment would compromise services furnished on the base date of the lease that owner is required to maintain (Rent Stabilization Code [9 NYCRR] § 2520.6 [r] [1]). In Greenberg, we applied an “adequate substitute” test under which alterations that affect required services are evaluated with respect to whether the alterations result in the provision of sufficiently equivalent services. DHCR, applying its administrative expertise, determined *110 that the proposed alterations would not result in the maintenance of required services, essentially deciding that the renovated apartment, and its kitchen in particular, would not provide “[t]hat space and those services which the owner was maintaining or was required to maintain on the applicable base dates . . . and any additional space or services provided or required to be provided thereafter by applicable law” (§ 2520.6 [r] [1]). Because the Deputy Commissioner’s determination represents a rational interpretation of the Rent Stabilization Code and is supported by the evidence, it must be judicially sustained (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]; Greenberg, 167 AD2d at 217).
Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Joan B. Lobis, J.), entered January 14, 2011, denying the petition which sought to annul and set aside the order and opinion of respondent New York State Division of Housing and Community Renewal dated April 22, 2010, which granted the petition for administrative review filed by the tenant of the subject premises and revoked a previously issued order of the Rent Administrator that had granted owner’s application to, inter alia, install an elevator within the premises, and dismissing the proceeding brought pursuant to CPLR article 78, should be affirmed, without costs.